A09A0486. FORTIS INSURANCE COMPANY et al. v. KAHN.
(683 SE2d 4)

MIKELL, Judge.

In this civil action, Daniel Kahn sued Fortis Insurance Company ("FIC"), Assurant, Inc. d/b/a Assurant Health f/k/a Fortis Health ("Assurant"), Fortis Benefits Insurance Company ("FBIC"), and Rogers Benefit Group, Inc. ("RBG") (hereinafter collectively referred to as "appellants"),[1] individually and on behalf of a class of similarly situated persons, alleging that appellants engaged in an illegal and fraudulent scheme to defraud customers. Specifically, Kahn argues that appellants misrepresented their insurance policies to be group insurance policies when the policies were, in fact, individual policies, which upon renewal, were adjusted on the basis of an illegal rating scheme that considered a certificate holder's individual claim experience and health conditions, in violation of Georgia's small group pooling laws, OCGA §§ 33-30-12 and 33-6-4. Appellants appeal from the certification of the class, arguing that the trial court abused its discretion in certifying the class under OCGA § 9-11-23. We affirm.

In Georgia, an action may be certified as a class action if the following factors are satisfied:

> (1) The class is so numerous that joinder of all members is impracticable; (2) There are questions of law or fact common to the class; (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) The representative parties will fairly and adequately protect the interests of the class.[2]

The plaintiff has the burden of establishing the right to class certification. "Certification of a class action is a matter of discretion with the trial judge, and, absent abuse of that discretion, we will not disturb the trial court's decision."[3]

The record shows that in 1995, Kahn contacted Phoenix and its

---

[1] Kahn also sued insurance agents Phoenix Associates, Inc. ("Phoenix"), Robert Marcus, and Marla Nelson, but did not seek to certify a class against them.

[2] OCGA § 9-11-23 (a).

[3] (Citation omitted.) *UNUM Life Ins. Co. of America v. Crutchfield*, 256 Ga. App. 582 (568 SE2d 767) (2002).

insurance agent Nelson in order to procure insurance for himself and his family, including his wife Jill and their two children. Kahn testified that Nelson told him he was purchasing a "group policy based on certain geographic area" and that his group included people in Georgia. Kahn understood that he was not purchasing employer-sponsored group insurance. On or around May 1, 1996, FBIC issued to Kahn and his family an Upper Midwest Employer Group Individual Members Plan ("UMEG IMP"), providing "individual major medical insurance" coverage. Upon issuing the policy to Kahn, appellants provided several written documents, including a Certificate of Group Insurance, a Group Insurance Premium Statement, a UMEG IMP policy, claim instructions, an IMP Supplemental Group Transmittal form, and a UMEG insurance card, which designated Kahn as the Employer and Employee.[4] At the time appellants issued his policy, Kahn's quarterly premium was $833.55.

In July 1996, Kahn was diagnosed with a brain tumor, resulting in his complete disability. During the period from May 1, 1996, to May 1, 2004, Kahn's quarterly premiums increased, forcing him to drop his family from the plan in 2001, increase his deductible, and reduce his available benefits. After removing his family from the insurance plan, Kahn's quarterly premium was $688.77. In 2004, Kahn's quarterly premium rose to $1,736.43, and his existing plan was cancelled and replaced by a new plan issued by FIC. The parties agree that in 1996, there were 5,757 Georgia policyholders with the same type of insurance issued to Kahn. By 2004, all policyholders in Georgia with Kahn's type of insurance had either allowed their policies to lapse or were migrated to other plans.

Kahn filed his complaint on November 24, 2004, asserting a private right of action for breach of statutory duty, OCGA §§ 33-30-12, 33-6-4 (b) (8) (A) (ii), and other claims, including breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment/money had and received, conspiracy, and fraud through uniform, written misrepresentations. Kahn alleges that because he and the putative class members were each issued a UMEG IMP certificate of "Group Coverage," appellants were not allowed to base the UMEG IMP renewal premiums on the health status, claims experience, medical condition, and length of time the policy had been in force for any one particular group, but instead, were required by law to pool the groups together when setting renewal premiums. Appellants contend that the UMEG IMP issued to Kahn and others is not subject to Georgia's small group pooling

---

[4] At the hearing on the motion for class certification, Kahn provided evidence that class members, such as Dana Blackstock, received identical documents.

law, OCGA § 33-30-12, because it is limited to small groups of at least two to no more than fifty employees, members, or enrollees; the IMP at issue here covered more than 5,000 individual Georgia enrollees. Moreover, the policy documents do not mention "small group" coverage, and there is no evidence that Kahn or any other putative class member was ever advised that their IMP coverage was subject to the "small group" requirements of OCGA § 33-30-12.

On December 28, 2005, Kahn filed a motion for class certification, seeking to pursue his claims against appellants on behalf of

> [a]ll persons or entities of all persons, residing in Georgia, who purchased or were sold a "UMEG IMP" certificate of group health insurance coverage (or type of coverage purchased by Danny Kahn) by or through [appellants] from January 1, 1993[,] to the date of class certification and who paid unlawfully increased renewal premiums as a result of [appellants'] illegal and discriminatory tier rating scheme.

The motion identified the appellants as follows: FBIC, provided insurance under UMEG Trust to employers and individuals; FIC, provided insurance in individual small employer group markets; Assurant, owns 100 percent of FBIC and FIC; RBG, company that marketed Fortis insurance products, including UMEG IMP product at issue in this case; and Phoenix (now known as Suburban General Agencies, Inc.), Marcus, and Nelson, insurance agents/agency responsible for selling to Kahn and others the UMEG IMP product at issue here. Following a hearing, the trial court entered a detailed written order certifying the class.

1. Appellants contend that the trial court erred by shifting the burden to them to disprove the class certification factors. The trial court's order provides that

> [i]n determining whether an action satisfies OCGA § 9-11-23, the [c]ourt is obliged to presume and accept the substantive allegations of the complaint as true and may consider the merits of the litigation only to the degree necessary in determining whether the requirements are satisfied. . . . A well-pleaded complaint generally constitutes a prima facie showing for class certification, thereby shifting the burden to a party opposing the class. A. Conte, *Newberg on Class Actions*, § 7.23 (4th Ed. 2002).

Appellants further contend that the trial court erred by uncritically accepting the allegations of Kahn's complaint, thus undermining the "rigorous analysis" required in assessing class certification.

Pretermitting the question of whether the trial court's statement is an accurate recitation of the law, we find no merit in this argument. Appellants provide no citations or specific examples to support their assertion that the trial court uncritically accepted the allegations of Kahn's complaint, and we will not cull the record on their behalf. Regardless, it is abundantly clear from reviewing the trial court's very detailed order and the record in this case that the court did not merely "accept the allegations of Kahn's complaint." The trial court presided over a two-day hearing on class certification and obviously reviewed — and incorporated into its order — the voluminous record in this case; the trial court looked well beyond the complaint in reaching its decision.

2. Appellants contend that the trial court abused its discretion in certifying the class under OCGA § 9-11-23, arguing that individual issues predominate over issues common to all class members.

> Under OCGA § 9-11-23, a class action is authorized if the members of the class share a common right and common questions of law or fact predominate over individual questions of law or fact. The character of the right sought to be enforced may be common although the facts may be different as to each member of the alleged class.[5]

(a) In this regard, appellants argue that Kahn did not rely upon any common document, but instead relied on the oral explanations of his agent. Appellants cite *Life Ins. Co. of Ga. v. Meeks*[6] for the proposition that fraud claims based on oral misrepresentations are not appropriate for class treatment precisely because reliance must be proved for each individual class member.[7] In its analysis, the trial court recognized this principle, but ruled that "circumstantial evidence of reliance common to the whole class may be used so that such common evidence would predominate and therefore not defeat class certification." The trial court held that the uniform written misrepresentations that the policy was group coverage, coupled with the class-wide circumstantial evidence that class members continued to renew their policies demonstrated reliance, but qualified its holding by noting that if such common circumstantial evidence is not forthcoming, it would reexamine the issue upon motion by appellants to decertify the class.

"In general, claims of fraud based upon oral misrepresentations are not appropriate for class treatment because the reliance element

---

[5] (Citations and punctuation omitted.) Id.

[6] 274 Ga. App. 212 (617 SE2d 179) (2005).

[7] Id. at 217-218 (3) (b).

must be proved factually for each individual class member."[8] The fact that reliance is an element in a cause of action, however, is not a complete bar to class certification.[9] "In claims of fraud based upon written representations, the reliance element may sometimes be presumed."[10] Here, a jury could reasonably infer that the class members' continued *renewal* of their policies after receiving the uniform, standard documents from appellants constitutes proof of reliance that is common to all class members. Finding whether common issues predominate over individual issues is a determination within the sound discretion of the trial judge.[11] In this case, we cannot hold that the trial court abused its discretion in concluding that common issues of law and fact predominate over individual issues, or in relying on *Klay*.[12]

(b) Appellants further argue that this case involves individualized factual questions such as whether each class member received the alleged written misrepresentation; what information they based their purchasing decision on; and what their individual agent represented/misrepresented to them. The complaint in this case alleges that appellants engaged in an illegal and fraudulent scheme to defraud customers by misrepresenting their insurance policies to be group insurance policies when the policies were, in fact, individual policies, which upon renewal, were adjusted on the basis of an illegal rating scheme that considered a certificate holder's individual claim experience and health conditions. According to the complaint, neither Kahn nor other class members got the benefit of the group coverage purported by their certificates of coverage. The complaint alleges that appellants' misrepresentations were made in writing on the standardized, uniform documents sent to all class members. All 5,757 class members allegedly received the same standard, uniform written documents and the same kind of policy. There is no merit in appellants' claim that this requires an individualized determination.[13]

---

[8] Id.

[9] *Klay v. Humana, Inc.*, 382 F3d 1241, 1258 (II) (C) (2) (11th Cir. 2004).

[10] (Punctuation omitted.) *Liberty Lending Svcs. v. Canada*, 293 Ga. App. 731, 741 (4) (668 SE2d 3) (2008), citing *Life Ins. Co. of Ga.*, supra at 218 (3) (b).

[11] See *Griffin Indus. v. Green*, 297 Ga. App. 354, 355 (2) (677 SE2d 310) (2009) (physical precedent only). See also *UNUM Life Ins. Co. of America*, supra at 583 ("Georgia case law provides that common questions of law and fact predominate when an action 'is brought on behalf of purchasers of agreements from a common source, the character of the right sought to be enforced is common, and common relief is sought' ") (citation omitted).

[12] See, e.g., *Liberty Lending Svcs.*, supra at 735-739 (1) (trial court did not abuse its discretion in certifying class under OCGA § 9-11-23 (a)); *Village Auto Ins. Co. v. Rush*, 286 Ga. App. 688, 689-692 (1), (2) (649 SE2d 862) (2007) (same).

[13] Compare *Stevens v. Thomas*, 257 Ga. 645, 650 (2) (361 SE2d 800) (1987) (reversing trial court's order certifying matter for class action: "[i]f fraud based upon oral misrepresentations,

(c) Appellants argue that differing defenses defeat the commonality requirement. For example, appellants point out that because Kahn knew or should have known of his fraud claim no later than March 1998, it is barred by the four-year statute of limitation.

"In determining the propriety of a class action, the first issue to be resolved is not whether the plaintiffs have stated a cause of action or may ultimately prevail on the merits but whether the requirements of OCGA § 9-11-23 have been met."[14] The requirements for class certification are numerosity, commonality, typicality, and adequacy of representation.[15] One of the main purposes of class certification is to "prevent burdening the judicial system or the class members with a multiplicity of individual suits."[16] Recognizing this purpose, the United States Court of Appeals for the Second Circuit has held that

> although a defense may arise and may affect different class members differently, this occurrence does not compel a finding that individual issues predominate over common ones. So long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification.[17]

We find this reasoning persuasive under the circumstances of this case. Moreover, as appellants do not provide evidence showing that any potential defenses would yield a different result for any class member *other than* Kahn, we are unable to find that the trial court abused its discretion in finding that common questions of law predominate.

3. Appellants contend that the trial court erred in certifying the class because each claim will require individualized proof, thus making the class unmanageable. Specifically, individualized inquiries are required in this case to determine what class members knew about their IMP coverage, when they knew it, how they knew it, whether the knowledge was material to them, and the extent of injury and damages allegedly suffered by each plaintiff. Appellants' arguments as to the individual knowledge inquiries are controlled

---

as opposed to written misrepresentations, is the gravamen of the complaint, the matter is not appropriate for class action treatment") (citations omitted).

[14] (Citation and punctuation omitted.) *Taylor Auto Group v. Jessie*, 241 Ga. App. 602, 603 (2) (527 SE2d 256) (1999).

[15] See OCGA § 9-11-23 (a).

[16] (Citation omitted.) *Life Ins. Co. of Ga.*, supra at 218 (4).

[17] (Citations and punctuation omitted.) *Augustin v. Jablonsky*, 461 F3d 219, 225 (II) (2d Cir. 2006).

adversely to them by our rulings in Division 2 (a) and (b).

As to proof of injury and damages, Georgia law provides that "minor variations in amount of damages . . . do not destroy the class when the legal issues are common."[18] As Kahn points out, it is disingenuous for appellants to

> suggest that a company can uniformly assess and system-atically apply renewal premium increases for individual policyholders on a massive scale in seventeen (17) states without looking at the individual policyholders individual characteristics — but then argue [on] appeal of a class certification decision that litigation requires this as an individual assessment.

As the Eleventh Circuit pointed out in *Klay*,

> [i]n assessing whether to certify a class, the Court's inquiry is limited to whether or not the proposed methods for computing damages are so insubstantial as to amount to no method at all. Plaintiffs need only come forward with plausible statistical or economic methodologies to demon-strate impact on a class-wide basis. Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification.[19]

At the hearing on the motion for certification in this case, Kahn's counsel explained the methodology for calculating damages and the trial court extensively questioned both sides on the issue. After reviewing that proposed methodology, we are satisfied that the trial court exercised its discretion in ruling that the computation of individual damages would not be so complex or fact-specific so as to bar certification.

4. In two related enumerations, Assurant, RBG, and FIC (the "ARF defendants") allege that the trial court erred in certifying the class against them based solely on an alleged conspiracy with FBIC, for which there was no evidence. The trial court found sufficient evidence of involvement on the part of the ARF defendants and further ruled that "[w]hether there is a valid claim for conspiracy depends on the facts that will be garnered by merits-based discov-ery." We agree with the trial court's ruling.

---

[18] (Citation and punctuation omitted.) *UNUM Life Ins. Co. of America*, supra at 583-584.

[19] (Citation, punctuation and footnotes omitted.) *Klay*, supra at 1259-1260 (3).

The issue here is twofold, whether plaintiffs can prove a conspiracy, and if so, whether the ARF defendants were parties to that conspiracy. Contrary to the ARF defendants' assertion, at this stage of the litigation Kahn does not have to prove the existence of a conspiracy or conclusively establish a conspiratorial link between FBIC and "the ARF defendants."[20] "The inquiry is not whether each defendant is conclusively linked to the conspiracy but whether a conspiracy is credibly pleaded."[21] "[E]vents relating to a [conspiracy] have been suggested which will suffice for class certification purposes."[22] If during the class period, plaintiffs have no evidence of a conspiracy or cannot prove that the ARF defendants were involved in any alleged violations, appellants may raise these issues in a separate motion.[23]

"It bears emphasis that certification orders are 'inherently tentative,' and the trial court retains jurisdiction to modify or even vacate them as may be warranted by subsequent events in the litigation."[24] As noted previously, the trial court recognized this in its order certifying the class.

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED JUNE 3, 2009 —
RECONSIDERATION DENIED JULY 23, 2009 

*Burr & Forman, Gregory F. Harley*, for appellants.
*Freeman, Mathis & Gary, Philip W. Savrin, Jacob E. Daly, Roy E. Barnes, John R. Bevis*, for appellee.

---

[20] We note that there is evidence in the record that shows some relationship or involvement between the ARF defendants and FBIC. As for Assurant, a December 2007, 10-K filing with the Securities and Exchange Commission reflects that Fortis, Inc., formed Assurant, Inc., and merged into it on February 4, 2004. As a result, Assurant became the "successor to the business operations and obligations of Fortis, Inc." As for RBG, the record reflects that RBG is an independent organization which markets FBIC products as well as products of other insurers. Additionally, there is evidence that RBG may have played a role in pricing structure changes that affected the UMEG IMP plans at issue in this case. Finally, as for FIC, the record reflects that in 1996, FBIC insured 5,757 UMEG IMP policyholders. In 2004, all of those policies were cancelled, and replaced by an individual health insurance plan with FIC.

[21] (Citations omitted.) *Davis v. Northside Realty Assoc.*, 95 F.R.D. 39, 45-46 (N.D. Ga. 1982).

[22] Id. at 46.

[23] See *Village Auto Ins. Co.*, supra at 692 (2) ("merit-based disputes are not ripe for resolution at the class certification stage, particularly where no dispositive motions have been filed, argued, or ruled on below, and merits discovery has not concluded").

[24] *J.M.I.C. Life Ins. Co. v. Toole*, 280 Ga. App. 372, 378 (2) (c) (634 SE2d 123) (2006), citing *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U. S. 147, 160 (102 SC 2364, 72 LE2d 740) (1982). See also *Village Auto Ins. Co.*, supra.