**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 7, 2023**

# In the Court of Appeals of Georgia

A23A0403. CAGLE v. PORTFOLIO RECOVERY ASSOCIATES, LLC.

DILLARD, Presiding Judge.

Portfolio Recovery Associates, LLC sued Westley Cagle to collect payment on an allegedly delinquent credit card debt. Cagle filed an answer and counterclaims, asserting a class action on behalf of similarly situated debtors that PRA had sued. Following a hearing, the trial court denied Cagle's motion for class certification. Cagle now appeals, contending the trial court erred in finding that he failed to satisfy the numerosity requirement for class certification and in addressing the underlying merits of his claims. For the following reasons, we affirm.

The record shows that in 2000, Cagle opened a credit-card account with Sears National Bank. And in 2003, Sears sold its entire credit-card portfolio to Citibank, N.

A., and so Citibank then became the creditor on Cagle's account despite him never applying for an account with Citibank. Nonetheless, by December 2011, Cagle was unable to pay all of the balance owed, and his account became delinquent.

PRA is a company that purchases defaulted debts from various creditors—at a significant discount from the face value of the debt—and then attempts to collect that debt from those account holders. In 2012, PRA purchased Cagle's debt from Citibank, and on September 13, 2013, it filed a lawsuit in the Magistrate Court of Talbot County against him to collect the debt, which it claimed totaled $1,696.17. And with its complaint, PRA filed an affidavit from one of its records custodians, who stated that a review of the relevant records confirmed the delinquent balance on Cagle's account.

Initially, Cagle failed to timely answer, and the magistrate court entered a default against him. But on October 29, 2013, Cagle filed an answer and a class-action counterclaim, alleging PRA sued him without investigating his debt and that the form affidavit claiming his account was reviewed was deceptive. And with his answer, Cagle also filed a motion to open the default, which the trial court granted the following day. Additionally, he moved to transfer the case to the superior court,

2

which the magistrate court granted, agreeing with him that the claims exceeded its jurisdiction.

A lengthy discovery period then ensued. But by April 2017, neither party was satisfied with the other's responses, and so both parties filed motions to compel. Then, on April 24, 2017, Cagle filed a motion to extend the class-certification deadline. After more delays, the trial court held a hearing on July 9, 2018, and ultimately, on November 23, 2020, it ordered Cagle to supplement his discovery responses and further define what he meant by the "form affidavit" referenced in his counterclaim. But in supplemental responses to PRA's discovery requests (served on December 23, 2020), Cagle objected to many of the requests and otherwise responded that he had been unable to locate any responsive documents to many of the requests.

Nevertheless, on March 8, 2021, Cagle filed a motion for class certification. Specifically, he moved for certification of a class defined as follows:

> All Georgia citizens who, within the applicable statute of limitations preceding the filing of this counterclaim to the date of the class certification, have been sued by [PRA] and where [PRA] submitted a form affidavit or declaration attesting to facts about the underlying debt even though the affiant did not have the requisite personal knowledge or review the relevant records.

In his motion, Cagle claimed PRA filed over 39,500 lawsuits to collect debts in Georgia during the class period and that a sampling of those cases showed it routinely used the form affidavit referenced above. In support, Cagle attached a list that included 2,000 of the case captions of actions filed by PRA and six of the form affidavits, which he asserted exemplified PRA's use of misleading information. PRA filed a response, and the trial court held a hearing on the matter. Then, on December 6, 2021, the trial court denied Cagle's motion for class certification, ruling that he "failed to provide any evidence or proof towards the numerosity requirement," and so it "need not consider the other elements of class certification." This appeal follows.[1]

A class action is an exception to the usual rule that litigation is "conducted by and on behalf of the individual named parties only, and consistent with its exceptional nature, a class action is permitted only in the limited circumstances described in OCGA § 9-11-23."[2] And the party seeking to represent a class "bears the burden of

---

[1] *See* OCGA § 9-11-23 (g) ("A court's order certifying a class or refusing to certify a class shall be appealable in the same manner as a final order to the appellate court which would otherwise have jurisdiction over the appeal from a final order in the action.").

[2] *Georgia-Pacific Consumer Prods., LP v. Ratner*, 295 Ga. 524, 525 (1) (762 SE2d 419) (2014) (citation and punctuation omitted); *accord Comcast Corp. v.*

proving that class certification is appropriate,"[3] which first entails "establishing that the prerequisites of OCGA § 9-11-23 (a) have been satisfied, those being (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy."[4] If the plaintiff fails

---

*Behrend*, 569 U. S. 27, 33 (II) (133 SCt 1426, 185 LEd 2d 515) (2013) (Scalia, J.); *see Bowden v. Med. Ctr., Inc.*, 309 Ga. 188, 192 (II) (1) (a) (845 SE2d 555) (2020) (explaining that "[b]ecause class actions represent an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only, such actions are permitted only in the limited circumstances described in OCGA § 9-11-23." (punctuation omitted)). Because many provisions of OCGA § 9-11-23 are "borrowed from Federal Rule of Civil Procedure 23," when Georgia appellate courts "interpret and apply OCGA § 9-11-23, [we] commonly look to decisions of the federal courts interpreting and applying Rule 23." *Ratner*, 295 Ga. at 525 (1) n.3.

[3] *Ratner*, 295 Ga. at 525 (1) (punctuation omitted); *accord Carnett's, Inc. v. Hammond*, 279 Ga. 125, 127 (3) (610 SE2d 529) (2005); *McGarry v. Cingular Wireless, LLC*, 267 Ga. App. 23, 25 (1) (599 SE2d 34) (2004).

[4] *Am. Debt Found., Inc. v. Hodzic*, 312 Ga. App. 806, 808 (720 SE2d 283) (2011) (punctuation omitted); *see* OCGA § 9-11-23 (a) ("One or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) The class is so numerous that joinder of all members is impracticable; (2) There are questions of law or fact common to the class; (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) The representative parties will fairly and adequately protect the interests of the class."); *Behrend*, 569 U. S. at 33 (II) (noting that "[t]o come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23) (citation omitted); *Harriston v. Chicago Trib. Co.*, 992 F2d 697, 703 (II) (C) (7th Cir. 1993) (Manion, J.) (noting that a plaintiff must satisfy the requirements of Federal Rule of Civil Procedure 23 in order to obtain class certification); *Ratner*, 295 Ga. at 526 (1) (explaining that to permit certification of a class, the named plaintiffs had to satisfy each of the four requirements described in OCGA § 9-11-23 (a), which included numerosity, commonality, typicality, and

to meet even one of the threshold requirements of OCGA § 9-11-23 (a), there is "no need to consider any of the other requirements of the statute, and the request for certification must fail."[5] Importantly, in order to satisfy these requirements, it is "not enough for the plaintiffs simply to have alleged that they were satisfied."[6] Rather, the plaintiffs must come forward with "evidence to prove their satisfaction of the statutory requirements."[7]

Additionally, in reviewing the trial court's order granting or denying class certification, we will "consider the factual findings as adopted by the trial court and affirm them unless clearly erroneous, and we will review the conclusions of law for an abuse of discretion."[8] But needless to say, any exercise of that discretion "must

---

adequacy of representation, as well as the predominance requirement of OCGA § 9-11-23 (b) (3)).

[5] *Bowden*, 309 Ga. at 194 (1) (b); *Ratner*, 295 Ga. at 527 (1).

[6] *Ratner*, 295 Ga. at 526 (1); *accord Ansley Walk Condo. Assoc., Inc. v. Atlanta Dev. Auth.*, 362 Ga. App. 191, 195 (867 SE2d 600) (2021).

[7] *Ratner*, 295 Ga. at 526 (1); *accord Ansley Walk Condo. Assoc., Inc.*, 362 Ga. App. at 195.

[8] *Hodzic*, 312 Ga. App. at 808 (punctuation omitted); *see Ratner*, 295 Ga. at 526 (1) (noting that whether to certify a class is a matter committed to the discretion of the trial court); *R. S. W. v. Emory Healthcare, Inc.*, 290 Ga. App. 284, 286 (1) (659 SE2d 680) (2008) (same).

comport with the statutory requirements."[9] Indeed, the certification of a class is appropriate only to the extent the trial court is "satisfied, after a rigorous analysis, that the statutory requirements have been satisfied."[10] And as the Supreme Court of the United States has explained, "[f]requently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim," which "cannot be helped" because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."[11] Bearing these guiding principles in mind, we turn to Cagle's claims of error.

1. Cagle first contends the trial court erred in finding that he failed to satisfy the numerosity requirement for class certification. We disagree.

Suffice it to say, numerosity is the threshold factor to consider in determining whether a class can be certified— "the sine qua non for class actions."[12] And upon a

---

[9] *Ratner*, 295 Ga. at 526 (1); *accord Bowden*, 309 Ga. at 192 (1) (a).

[10] *Ratner*, 295 Ga. at 526 (1) (punctuation omitted); *accord Bowden*, 309 Ga. at 193 (1) (a).

[11] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (II) (A) (131 SCt 2541, 180 LE2d 374) (2011) (Scalia, J.) (citation and punctuation omitted); *accord Ratner*, 295 Ga. at 526-27 (1).

[12] *Hodzic*, 312 Ga. App. at 809 (1) (punctuation omitted); *accord Ford Motor Credit Co. v. London*, 175 Ga. App. 33, 35-36 (332 SE2d 345) (1985).

finding that the "numerousness" of parties makes it "impracticable without great delay and other inconveniences to join them all, which would obstruct and probably defeat the purposes of justice, the trial court may consider whether it represents a proper case to proceed as a class action."[13] Importantly, in outlining a plaintiff's burden in this regard, the Eleventh Circuit Court of Appeals has explained that "although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class."[14] But even so, a plaintiff still bears the burden of "making some showing, affording the [trial] court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement."[15] Indeed, explained more bluntly by the Third Circuit

---

[13] *Hodzic*, 312 Ga. App. at 809 (1) (punctuation omitted); *see* OCGA § 9-11-23 (a) (1) (requiring the class to be "so numerous that joinder of all members is impracticable"); *London*, 175 Ga. App. at 36 (explaining that when the "numerousness" of parties makes it impracticable without great delay and other inconveniences to join them all, which would obstruct and probably defeat the purposes of justice, a court of equity will proceed to decree without them).

[14] *Vega v. T-Mobile USA, Inc.*, 564 F3d 1256, 1267 (III) (A) (11th Cir. 2009) (punctuation omitted); *accord Evans v. U.S. Pipe & Foundry Co.*, 696 F2d 925, 930 (11th Cir.1983).

[15] *Vega*, 564 F3d at 1267 (III) (A).

8

Court of Appeals, "[m]ere speculation as to the number of class members—even if such speculation is a bet worth making—cannot support a finding of numerosity."[16]

Here, Cagle's evidence in support of the numerosity requirement consisted of an affidavit from his legal counsel, claiming PRA had filed over 39,500 lawsuits in Georgia to collect debts during the class period. And this affidavit included a list with 2,000 case captions of actions filed by PRA and six of the form affidavits, which he asserted exemplified PRA's use of such documents despite the affiant not actually having any personal knowledge regarding the accounts at issue. But as the trial court aptly noted in its order, Cagle failed to provide *any* evidence the six form affidavits contained misleading information or that the affiants had no knowledge regarding the accounts, or if the affiants had not reviewed them (as he alleged), or if the debtors suffered any damages as a result of PRA using such affidavits. Additionally, the trial court further noted PRA provided evidence that—for at least four of Cagle's sample affidavits—the affiant *did*, in fact, have personal knowledge based on reviewing the account at issue, thus belying Cagle's contention regarding the validity of those affidavits. The only conclusion, then, that can be drawn from the evidence Cagle

---

[16] *Hayes v. Wal-Mart Stores, Inc.*, 725 F3d 349, 357 (III) (B) (3rd Cir. 2013) (punctuation omitted).

9

presented to the trial court is that the number of class members would be equal to or less than 39,496 and equal to or greater than zero. But when a putative class is "some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone."[17] Given these circumstances, Cagle failed to satisfy the numerosity requirement, and the trial court did not abuse its discretion in denying his motion for class certification on this ground.[18]

---

[17] *Hayes*, 725 F3d at 358 (III) (B); *accord Mielo v. Steak 'n Shake Operations, Inc.*, 897 F3d 467, 486 (III) (A) (3rd Cir. 2018).

[18] *See Mielo*, 897 F3d at 486-87 (III) (A) (holding plaintiffs failed to establish numerosity to certify class action against restaurant chain given that they only provided speculative evidence about the portion of the number of disabled individuals living in the United States who had actually patronized restaurant and who had experienced or would experience an ADA violation); *Hayes*, 725 F3d at 357-58 (III) (B) (explaining plaintiff failed to show numerosity based on improper speculation when only concrete numerical evidence presented was that retail-defendant in one state had on record 3,500 allegedly deceptive transactions that included both price-override and sale of service plan, with no factual basis for determining how many of those transactions met the class criteria *Vega*, 564 F3d at 1267 (III) (A) (finding the district court engaged in impermissible speculation where it inferred numerosity for a Florida-only class "without the aid of a shred of Florida-only evidence," but only evidence on a national scale); *Sliwa v. Bright House Networks, LLC*, 333 FRD 255, 273 (III) (C) (1) (M.D. Fla. 2019) (holding mere presumption by cell phone service subscriber that the 9,406 cell phone numbers identified by subscriber's proffered expert witness belonged to non-customers of provider of cable, internet, and phone services, who had not consented to receiving automated calls by entering into a residential subscriber agreement with the provider, was not sufficient to establish the numerosity requirement for class certification); *Colomar v. Mercy Hosp., Inc.*, 242 FRD 671, 676 (III) (A) (1) (S.D. Fla. 2007) (denying certification

2. Cagle also contends the trial court erred in addressing the underlying merits of his claims. Nevertheless, given our holding in Division 1 *supra*, that Cagle failed to satisfy the numerosity requirement in OCGA § 9-11-23 (a), we need not address this argument.[19]

For all these reasons, we affirm the trial court's denial of Cagle's motion for class certification.

*Judgment affirmed. Rickman, C. J., and Pipkin J., concur.*

---

when the plaintiff offered "no means for rationally estimating which number of the total uninsureds are class members," as the plaintiff "cannot simply rely on the 24,000 figure and ask the Court to infer that a minimum number paid the full bill given the sheer size of the uninsured pool"); *Sandlin v. Shapiro & Fishman*, 168 FRD 662, 666 (I) (M.D. Fla.1996) (denying class certification based in part on lack of numerosity because plaintiffs relied on the fact that "standard form documents and standard practices were used by defendants with substantial transaction volumes gives rise to a reasonable inference that the number of class members exceeds the 10-40 requirement").

[19] *See Bowden*, 309 Ga. at 194 (1) (b) (explaining that if "the plaintiff fails to meet even one of the threshold requirements of OCGA § 9-11-23 (a), there is no need to consider any of the other requirements of the statute, and the request for certification must fail" (punctuation omitted)).

11