A07A2461. R. S. W. v. EMORY HEALTHCARE, INC.
(659 SE2d 680)

RUFFIN, Judge.

R. S. W., individually and on behalf of similarly situated persons, filed a class action lawsuit against Emory Healthcare, Inc. alleging multiple claims in connection with his possible exposure to a fatal disease during a surgical procedure. In five enumerations of error, he appeals from the trial court's denial of his motion for class certification. Finding no abuse of discretion, we affirm.

The record shows that on September 10, 2004, physicians at Emory performed a brain biopsy on "Patient X" in an effort to diagnose her illness. Following the procedure, the surgical instruments used during the biopsy were "subjected to normal sterilization techniques including cleaning the instruments in a solution and heating [them] to 270 degrees Fahrenheit for four minutes in a pre-vacuumed surgical autoclave."

Following the biopsy, an Emory pathologist who was concerned that the tissue might have been infected with "a transmittable

neurodegenerative disease," sent it to the Centers for Disease Control ("CDC") for further evaluation. On September 15, 2004, the CDC informed Emory that based upon testing conducted on the biopsy sample, it had concluded that there was a possibility that Patient X was infected with Creutzfeldt-Jakob Disease ("CJD"). CJD is a fatal, incurable, rapidly progressive disease that causes neurological problems, including dementia. It is thought to be transmitted by proteins called "prions," and may be transmitted during surgery.[1]

On September 15, 2004, after discussions regarding the CDC report, Emory resterilized all of its neurosurgical instruments using an "enhanced level of sterilization" for instruments potentially contaminated with prions, which included heating them at a higher temperature for 18 minutes. Thereafter, Emory learned that it was possible that neurosurgical instruments were also being used for nonneurosurgical surgeries and, as a result, the hospital subjected all of its operating room instruments to the enhanced sterilization procedures on September 27, 2004. Then, on September 30, 2004, following multiple meetings, Emory sent letters to 98 patients who had undergone surgeries to their central nervous systems between September 10 and September 27, and to 418 patients who had undergone nonneurological surgeries during the same time period, advising the patients about Patient X's CJD diagnosis and their potential exposure to the disease. The letters characterized the chances of potential transmission as "extremely small," and stated that

> there are no known cases of transmission of CJD by surgical equipment to any patients worldwide in the past 28 years. In addition, there are only six known cases of CJD transmitted by surgical equipment before 1976, and all six of those patients had neurosurgical procedures. Furthermore, all of those cases occurred before modern standards of sterilization, such as those used by Emory in its standard procedures, were adopted.

R. S. W. claims to have had disc repair surgery at Emory on September 24, 2004. After receiving the letter regarding his potential exposure to CJD, he filed suit against Emory, alleging that it negligently failed to inform him of the risk before his surgery. His specific claims include violations of liberty interests; wilful and wanton

---

[1] However, there are no known instances of transmission during surgeries which did not involve the central nervous system.

misconduct; breach of fiduciary duty; damages to his "peace, happiness, and feelings"; negligent infliction of emotional distress; and negligent misrepresentation.

Thereafter, R. S. W. filed a motion for class certification, seeking to represent all patients who had surgery at Emory University Hospital between September 15, 2004 and September 27, 2004. Following oral argument, the trial court denied the motion for class certification.

1. To demonstrate entitlement to class action certification, R. S. W. must meet the following requirements:

> (1) numerosity — that the class is so numerous as to make it impracticable to bring all members before the court; (2) commonality — that there are questions of law and fact common to the class members which predominate over any individual questions; (3) typicality — that the claim of the named plaintiff is typical of the claims of the class members; (4) adequacy of representation — that the named plaintiff will adequately represent the interest of the class; and (5) superiority — that a class action is superior to other methods of fairly and efficiently adjudicating the controversy.[2]

In reviewing this case, we are mindful that "the discretion of the trial judge in certifying or refusing to certify a class action is to be respected in all cases where not abused."[3] Moreover, we will affirm the trial court's factual findings unless they are clearly erroneous.[4] "Under the 'clearly erroneous' test, factual findings must be affirmed if supported by any evidence."[5]

R. S. W. contends that the trial court abused its discretion in concluding that his claims do not present common questions of law and fact. We disagree.

In a detailed order, the trial court states that it "is not persuaded that all of the patients at issue were subjected to the same level of risk, i.e., that the issues common to all patients 'predominate over any individual questions,' "[6] and that "the claims that may be brought by the members of the purported class must be assessed on an

---

[2] *Carnett's, Inc. v. Hammond*, 279 Ga. 125, 126 (2) (610 SE2d 529) (2005); see OCGA § 9-11-23.

[3] *Jones v. Douglas County*, 262 Ga. 317, 323 (2) (418 SE2d 19) (1992); see also *UNUM Life Ins. Co. of America v. Crutchfield*, 256 Ga. App. 582 (568 SE2d 767) (2002).

[4] See *Village Auto Ins. Co. v. Rush*, 286 Ga. App. 688 (649 SE2d 862) (2007).

[5] Id.

[6] (Punctuation omitted.)

individual basis, which is to say that there are no questions of law or fact which predominate over any individual questions."

R. S. W. argues that the common question is "[w]hether . . . Emory acted with reasonable ca[r]e in responding to the risk at issue." But as our Supreme Court has cautioned, "a common question is not enough when the *answer* may vary with each class member and is determinative of whether the member is properly part of the class."[7]

Here, as the trial court concluded, a determination of whether Emory violated the appropriate standard of care requires an analysis of the potential risk to the patient. This risk varies based upon, inter alia, the dates of the putative class members' surgeries, the type of surgery performed, and/or whether the instruments used in their respective surgeries were subjected to standard or enhanced levels of sterilization. Therefore, the answer to the question of whether Emory breached its duty to warn its surgical patients requires "a highly individualized, case-by-case determination as to each putative class member," which precludes class certification.[8] As we have previously held, " '[w]here the resolution of individual questions plays such an integral part in the determination of liability, a class action suit is inappropriate.' "[9] Thus, we conclude that the trial court did not abuse its discretion in determining that R. S. W.'s claims were not suitable for class certification because individual fact issues would predominate over any common issues shared by the putative class.

2. Given our holding in Division 1, we need not address R. S. W.'s remaining enumerations as to the other factors addressed in the trial court's order.[10]

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED MARCH 13, 2008 — 

*Ford & Barnhart, James L. Ford, Sr.*, for appellant.
*Weinberg, Wheeler, Hudgins, Gunn & Dial, J. M. Hudgins IV, Scott P. Kerew, Michael A. Sexton*, for appellee.

---

[7] (Emphasis in original.) *Carnett's, Inc.*, supra at 129 (4).
[8] *Rollins, Inc. v. Warren*, 288 Ga. App. 184, 188 (1) (653 SE2d 794) (2007).
[9] *Winfrey v. Southwest Community Hosp.*, 184 Ga. App. 383, 384 (1) (361 SE2d 522) (1987).
[10] See *Duffy v. Landings Assn.*, 254 Ga. App. 506, 509 (1) (563 SE2d 174) (2002).