A10A1654. BRENNTAG MID SOUTH, INC. v. SMART et al.
(710 SE2d 569)

ADAMS, Judge.

Brenntag Mid South, Inc. appeals the trial court's order certifying an "inconvenience/evacuation class" in an action filed by Louise Smart, Emma Lou Stokes and Turista Elmore (the "Plaintiffs").

This action arose out of the accidental release of a cloud of glacial acetic acid from a chemical storage tank at Brenntag's facility in East Point, Georgia, on December 15, 2004 and the subsequent evacuation of area residents by governmental authorities. The Plaintiffs allege that a Brenntag employee caused the release by connecting a steam delivery line to the tank containing the acid and then leaving the tank unattended. Plaintiffs estimate that approximately 8,000 residents lived within the evacuation zone.

The Plaintiffs originally filed their action in federal court seeking class certification for the evacuees. On August 24, 2005, the parties entered into a letter agreement in which the Plaintiffs agreed to dismiss the federal action and re-file their action in state court "seeking class certification as to the inconvenience/evacuation class only" (the "Letter Agreement"). The Letter Agreement further provided that the Plaintiffs agreed to abandon their attempts to certify other classes (other than the evacuation/inconvenience class), including claims on behalf of a class for personal injuries, business losses, lost income and property damage. In exchange for the dismissal of the federal action and the abandonment of other sub-classes, Brenntag agreed to stipulate to certification of a "class of individuals who suffered inconvenience damages associated with being evacuated by order of any fire or law enforcement agency resulting from the emission of glacial acetic acid on December 15, 2004 at Brenntag's chemical storage facility in East Point, Georgia" (the "Evacuation Class").

On December 12, 2006, the Plaintiffs re-filed their action in the Superior Court of Fulton County, but their complaint sought certification of three separate classes: a Property Damage Class, an Evacuation Class and a Rescission Class (for persons who had settled their claims, but now sought to rescind the settlement on the ground of fraud). Brenntag answered asserting defenses based upon the Letter Agreement, estoppel, accord and satisfaction, and settlement in opposition to certification of the Property Damage Class and the Rescission Class. Two years later, on December 12, 2008, Brenntag moved for partial summary judgment on the Plaintiffs' property damage, fraudulent claims practices and rescission claims, asserting that they were barred by the Letter Agreement. But one month later, on January 12, 2009, while the motion was still pending, Brenntag wrote a letter purporting to rescind the Letter Agreement on the ground that the Plaintiffs had breached it by seeking property damages and by seeking to certify two additional classes.

On January 23, 2009, the Plaintiffs filed a brief opposing the motion for partial summary judgment and moved for certification of two basic classes, (1) an Evacuation Class, which they defined as a subclass of persons with a possessory interest in real property within the evacuation zone who evacuated due to the chemical release; and (2) the Rescission Class, defined as all those who evacuated but who subsequently released their evacuation claims. Several days later, Brenntag withdrew its motion for partial summary judgment. And on February 20, 2009, Brenntag amended its answer to oppose certification of the Evacuation Class in addition to the other two proposed classes.

Subsequently, the parties presented argument at a class certification hearing before Special Master Cary Ichter. The Plaintiffs clarified at that hearing that they did not intend to pursue certification of the Property Damage Class or to seek property damages. Rather they sought to recover for their inconvenience injuries arising from the evacuation and sought to certify a rescission sub-class for those parties who had previously settled such claims, as well as a separate common issues class. After hearing argument, the special master entered a "Recommendation and Report as to Findings of Fact and Conclusions of Law Regarding Class Certification" (the "Ichter Report").

Ichter first concluded that the Letter Agreement provided an independent basis for certifying the Evacuation Class. He found that the Plaintiffs' attempt to certify a Property Damage Class was not a material breach of the agreement especially since the Plaintiffs had stipulated at the hearing that they would not seek such damages. He further found that because the Rescission Class did not exist and was not even contemplated by the parties at the time they entered into

the Letter Agreement, the Plaintiffs were not barred from seeking certification of that subclass. Ichter further concluded that the Plaintiffs met the requirements for class certification as to both the Evacuation Class and the Rescission Class.

The trial court subsequently entered an order adopting the Ichter Report and granting the Plaintiffs' motion for class certification, "in that the Plaintiff has satisfied the requirements of [OCGA §] 9-11-23 (a) and (b) (3) for the proposed evacuation class, and the inconvenience/evacuation class is certified" and making "the Report and Recommendation submitted by the Special Master the Order of this Court."

On appeal, Brenntag enumerates a number of errors in the special master's findings as adopted by the trial court relating to the Letter Agreement and class certification.

1. *Letter Agreement* — Brenntag asserts that the trial court committed error in adopting the Ichter Report's findings that the Letter Agreement did not bar the Plaintiffs from seeking certification of the Rescission Class and in finding that the agreement provided an independent basis for certification of the Evacuation Class because the Plaintiffs breached the agreement and Brenntag rescinded it. Accordingly, Brenntag is seeking both to enforce the Letter Agreement and simultaneously to rescind it. We need not address the validity of the Letter Agreement, however, because the trial court did not base any ruling upon it.

The trial court's order did not certify the Rescission Class, and thus no ruling in that regard exists for our review. "Appellate courts exist to review asserted error but where the defendant makes no objection or obtains no ruling of the trial court, the contended problem cannot be made the basis of appellate review as there is no ruling to review." (Citation omitted.) *Sanders v. State*, 179 Ga. App. 168, 169 (2) (345 SE2d 677) (1986).[1] Accordingly, we need not address the Ichter Report's findings as to the Rescission Class. Moreover, the trial court did not certify the Evacuation Class on the basis of the Letter Agreement. Rather, the trial court stated that it was certifying the class because it "satisfied the requirements of [OCGA §] 9-11-23 (a) and (b) (3)." And because we find below that the Evacuation Class satisfies the prerequisites of Rule 23, any consideration of the Letter Agreement would be superfluous.

2. *Class Action Analysis* — To obtain class action certification, the class representatives must satisfy "all four prerequisites of

---

[1] Similarly, the trial court issued no ruling in connection with the Ichter Report's findings as to a litigation plan, and thus we do not reach Brenntag's enumeration of error asserting that the plan is insufficient.

OCGA § 9-11-23 (a), and at least one of the requirements set forth in OCGA § 9-11-23 (b)." (Punctuation and footnote omitted.) *Doctors Hosp. Surgery Center v. Webb*, 307 Ga. App. 44, 46 (704 SE2d 185) (2010). The Plaintiffs here sought to certify a class under OCGA § 9-11-23 (b). Accordingly, they must establish the following factors:

> (1) numerosity — that the class is so numerous as to make it impracticable to bring all members before the court; (2) commonality — that there are questions of law and fact common to the class members which predominate over any individual questions; (3) typicality — that the claim of the named plaintiff is typical of the claims of the class members; (4) adequacy of representation — that the named plaintiff will adequately represent the interest of the class; and (5) superiority — that a class action is superior to other methods of fairly and efficiently adjudicating the controversy.

(Footnote omitted.) *R. S. W. v. Emory Healthcare*, 290 Ga. App. 284, 286 (1) (659 SE2d 680) (2008). See also OCGA § 9-11-23 (a) and (b). And in reviewing the certification order, this Court is to respect

> the discretion of the trial judge in certifying or refusing to certify a class action . . . where not abused. . . . Moreover, we will affirm the trial court's factual findings unless they are clearly erroneous. Under the "clearly erroneous" test, factual findings must be affirmed if supported by any evidence.

(Punctuation and footnotes omitted.) *R. S. W. v. Emory Healthcare*, 290 Ga. App. at 286 (1). "Implicit in this deferential standard of review is a recognition of the fact-intensive basis of the certification inquiry and of the trial court's inherent power to manage and control pending litigation." *Resource Life Ins. Co. v. Buckner*, 304 Ga. App. 719, 729 (2) (698 SE2d 19) (2010).

Here, the trial court adopted and cited the special master's findings in certifying the Evacuation Class. The Ichter Report defined the Evacuation Class as "consisting of all natural persons, including minors and adults, who, on December 15, 2004, resided within the boundaries of the area of the evacuation zone (as described in Plaintiffs' motion papers)[2] and who evacuated in response to the incident." The report analyzed each of the require-

---

[2] The Plaintiffs' motion papers defined the evacuation zone as a geographical boundary based upon the streets identified by the evacuation orders as well as expert consultation as to "the actual geographical extent of the chemical plume as it spread."

ments for class certification as they pertained to this proposed class. In reviewing the trial court's order, we will consider the factual findings as adopted by the trial court and affirm them unless clearly erroneous, and we will review the conclusions of law for an abuse of discretion. And, due to the dearth of Georgia cases addressing a class action such as this involving an alleged mass tort, it is appropriate that we look to federal cases "interpreting Rule 23 of the Federal Rules of Civil Procedure, the rule upon which OCGA § 9-11-23 was based, for guidance." (Footnotes omitted.) *Fuller v. Heartwood 11*, 301 Ga. App. 309, 312 (687 SE2d 287) (2009).[3]

(a) *Rule 23 (a) Analysis* — We first consider the four factors under subsection (a) of Rule 23: numerosity, commonality, typicality and adequacy. On appeal, Brenntag takes issue with each of these factors generally and by reference to its filings in the trial court below.

(i) *Numerosity* — "In order to satisfy this requirement, [the Plaintiffs] need not allege the exact number and identity of the class members, but must only establish that joinder is impracticable through some evidence or reasonable estimate of the number of purported class members." (Citation and punctuation omitted.) *In re Netbank*, 259 FRD 656, 664 (N.D. Ga. 2009). Additionally, "[t]he class simply must meet a 'minimum standard of definiteness which will allow the trial court to determine membership in the proposed class.' " (Citations omitted.) *In re Tri-State Crematory Litigation*, 215 FRD 660, 690 (IV) (A) (1) (N.D. Ga. 2003).

Here, the Plaintiffs estimated the number of potential class members at 8,000, and their counsel represented at the hearing that over 200 individuals had signed retainer contracts and submitted claim forms in connection with this incident. And the class is defined by a specific geographic boundary and includes only those who resided there and were evacuated as a result of the chemical plume. We find no abuse of discretion in the trial court's adoption of the finding that the Plaintiffs met the numerosity requirement.

(ii) *Commonality* — To establish the requisite commonality, the Plaintiffs must show the existence of common questions of law and fact. "[T]he commonality requirement does not require that all questions of law and fact be common to every member of the class.

---

[3] See also *Barnum v. Coastal Health Svcs.*, 288 Ga. App. 209, 215 (2) (b) (653 SE2d 816) (2007) (similarity between Georgia Civil Practice Act and Federal Rules of Civil Procedure makes it proper for Georgia courts to consider constructions placed on federal rules by federal courts); *Sta-Power Indus. v. Avant*, 134 Ga. App. 952, 953 (1) (216 SE2d 897) (1975) ("Since there are only a few definitive holdings in Georgia [concerning the requirements for class certification under] the Civil Practice Act, we also look to federal cases to aid us.") (citation omitted).

Rather, the rule requires only that resolution of the common questions affect all or a substantial number of the class members." (Citations and punctuation omitted.) *Flournoy v. Honeywell Intl.*, 239 FRD 696, 699 (S.D. Ga. 2006). Here the class members were all evacuated as the result of the same incident at the Brenntag facility, and thus as the Ichter Report found, the class shares common issues of alleged negligence, liability, causation, damages and punitive damages.[4] See id. (commonality element satisfied for class in suit for nuisance and trespass based upon alleged migration of mercury and PCBs from plant site onto class members' properties).

(iii) *Typicality* — "Traditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." (Citation omitted.) *Piazza v. Ebsco Indus.*, 273 F3d 1341, 1346 (11th Cir. 2001). "The typicality requirement under OCGA § 9-11-23 (a) is satisfied upon a showing that the defendant committed the same unlawful acts in the same method against an entire class." (Citation and punctuation omitted.) *Liberty Lending Svcs. v. Canada*, 293 Ga. App. 731, 738 (1) (b) (668 SE2d 3) (2008). Thus, "typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." (Citation and punctuation omitted.) *Vega v. T-Mobile USA*, 564 F3d 1256, 1275 (11th Cir. 2009). "A sufficient nexus is established if the claims or defenses of the class and the class representative[s] arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines*, 741 F2d 1332, 1337 (11th Cir. 1984).

The trial court adopted the Ichter Report's finding that the "Plaintiffs and all class members share the same set of circumstances resulting in the evacuation and same theories of recovery." And the record demonstrates that the three class representatives — Smart, Stokes and Elmore — each resides within the evacuation zone, and each was forced to leave her home under the mandatory evacuation order. Smart and Elmore share a residence approximately one to two miles from the Brenntag facility. Elmore owns the property. They both evacuated their home in the early morning hours of December 15-16, 2004 in response to a police announcement over a bullhorn of a "mandatory evacuation." Stokes was renting a house within the evacuation zone at the time of the incident. Stokes also evacuated her home in the middle of the night in response to the police announcement. Thus the claims of the proposed representa-

---

[4] As discussed in Division 2 (b) (i) below, we conclude that these common issues predominate over any individual issues.

tives arise from the same event and would be based on the same legal theory as the remainder of the class.

But Stokes has one factor distinguishing her from the other two class representatives. She settled her claims against Brenntag for $200, although she states that she felt tricked into doing so. In connection with that settlement, Stokes signed a "Release and Indemnity Agreement" in favor of Brenntag as to any claims arising out of the December 15, 2004 incident. Thus, her claims cannot be considered typical of the Evacuation Class. She would only be able to pursue any such claims if she successfully won the right to rescind the settlement. Thus, we conclude that it was an abuse of discretion for the trial court to adopt the Ichter Report to the extent that it found that Stokes met the requirement of a typical class representative for the Evacuation Class. See *Williams v. Cox Enterprises*, 159 Ga. App. 333, 335 (5) (283 SE2d 367) (1981) (execution of pre-race waiver precluded plaintiff from representing putative class of race participants claiming organizers' negligence resulted in injury).

Nevertheless the trial court properly adopted the finding that Smart and Elmore satisfied the typicality requirement.

(iv) *Adequacy* — "The important aspects of adequate representation are whether the plaintiffs' counsel is experienced and competent and whether plaintiffs' interests are antagonistic to those of the class." (Citation and punctuation omitted.) *Liberty Lending Svcs. v. Canada*, 293 Ga. App. at 739 (1) (c). The record in this case supports the finding, as adopted by the trial court that the adequacy requirement is met. Brenntag does not challenge the competence or experience of counsel on appeal nor does it allege that Smart and Elmore have antagonistic interests. And nothing in the record suggests any such antagonistic interests or that Smart and Elmore would not vigorously pursue the claims on behalf of the class. Accordingly, as both elements of the requirement are met, the trial court did not abuse its discretion in adopting the finding of adequacy. Thus, the trial court properly found that the Plaintiffs had met the requirements under Rule 23 (a).

(b) *Rule 23 (b) (3) Analysis* — Under Rule 23 (b) (3) a class may be certified if the questions of law or fact predominate over individual issues and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." OCGA § 9-11-23 (b) (3). Factors to be considered include:

(A) [t]he interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) [t]he extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) [t]he desirability or undesirability of concen-

trating the litigation of the claims in the particular forum; and (D) [t]he difficulties likely to be encountered in the management of a class action.

OCGA § 9-11-23 (b) (3).

(i) *Predominance* — "The Rule 23 (b) (3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. A plaintiff may satisfy this requirement by showing that issues subject to class-wide proof predominate over issues requiring proof that is unique to the individual class members." (Citations and punctuation omitted.) *In re Tri-State Crematory Litigation*, 215 FRD at 691 (B) (1). Therefore, "class certification is not appropriate if resolution of individual questions plays a significant, integral part of the determination of liability. But as long as the common questions predominate, a class may be certified even if some individual questions of law or fact exist." (Punctuation and footnotes omitted.) *Village Auto Ins. Co. v. Rush*, 286 Ga. App. 688, 690-691 (1) (649 SE2d 862) (2007). Thus, "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." (Citations and punctuation omitted.) *In re Tri-State Crematory Litigation*, 215 FRD at 694 (B) (1) (c) (2) (c). See also *Sterling v. Velsicol Chemical Corp.*, 855 F2d 1188, 1197 (6th Cir. 1988) ("where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy").

The Ichter Report, as adopted by the trial court, found, that the class in this case shared common issues which predominated over individual issues, noting that "all class members evacuated and claimed to have suffered damages resulting from the chemical release at the same time in the same geographical area as a result of the same event." Moreover, the report found that "[n]ot only do the class members share the same cause of injuries, they share the same type of injuries — having to leave their homes and lose use and enjoyment of their property." We cannot say that these findings are clearly erroneous, and thus the trial court did not abuse its discretion in adopting the special master's determination that common issues predominate over individual issues for the Evacuation Class.

(ii) *Superiority* — The Plaintiffs must also demonstrate that a class action will be a superior method of handling this litigation. "The rule asks us to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *Georgine v. Amchem Products*, 83 F3d

610, 632 (3d Cir. 1996), aff'd, 521 U. S. 591 (117 SC 2231, 138 LE2d 689) (1997). Thus, "[t]he issue is not whether a class action will be difficult to manage. Instead, the trial court is to consider the relative advantages of a class action suit over other forms of litigation which might be available." (Footnote omitted.) *EarthLink v. Eaves*, 293 Ga. App. 75, 77 (1) (666 SE2d 420) (2008).

The claims here arose from one single occurrence, and class adjudication provides the most efficient method for resolving factual and legal issues surrounding the events leading to the release of the plume and the resulting evacuation, without the necessity for re-litigating these issues in multiple actions. Moreover, as the Ichter Report found, the damages involved for each class member are likely to be relatively small making it unlikely that other class members would have a strong interest in controlling the litigation for themselves. And it is unlikely that counsel could be found to pursue such relatively minor claims on an individualized basis so that "[e]conomic reality dictates that petitioner's suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U. S. 156, 161 (94 SC 2140, 40 LE2d 732) (1974). See also *Sterling v. Velsicol Chemical Corp.*, 855 F2d at 1197 (class action "best suited" for this kind of litigation). "[T]here is simply no need to burden either the court system or the individual class members by requiring each member of the class to pursue his or her own action to recover a relatively small amount of damages." (Footnote omitted.) *EarthLink v. Eaves*, 293 Ga. App. at 77 (1). See also *Trend Star Continental v. Branham*, 220 Ga. App. 781, 782 (1) (469 SE2d 750) (1996). Under the circumstances, we find that the trial court did not abuse its discretion in adopting the finding that a class action would be the superior method for litigating this claim.

Accordingly, the trial court did not abuse its discretion in confirming the Evacuation Class as defined in the Ichter Report except to the extent the court approved Stokes as a typical and/or adequate representative for that class. Therefore, we affirm the trial court's order certifying the Evacuation Class with Smart and Elmore as class representatives and reverse only to the extent that the trial court's order can be interpreted as approving Stokes as a class representative for the Evacuation Class.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 30, 2011.

*Glaser, Currie & Bullman, David S. Currie*, for appellant.
*Roger W. Orlando*, for appellees.