**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**December 30, 2021**

# In the Court of Appeals of Georgia

A21A1623. ANSLEY WALK CONDOMINIUM ASSOCIATION, INC. et al. v. THE ATLANTA DEVELOPMENT AUTHORITY d/b/a INVEST ATLANTA et al.

BROWN, Judge.

Ansley Walk Condominium Association, Inc., Wayne A. Christian, Robert R. Smith, and Foah Properties, LLC (collectively "Plaintiffs"), filed a putative class action for inverse condemnation and trespass against The Atlanta Development Authority d/b/a Invest Atlanta ("ADA"), Atlanta BeltLine, Inc. ("ABI"), and the City of Atlanta (collectively "the City"), alleging that the City has failed to compensate property owners for the unauthorized use and taking of their property to develop a portion of the Atlanta BeltLine. Plaintiffs appeal from the trial court's denial of class certification. For the reasons that follow, we affirm.

*Background*

The record shows that the 3.46-mile stretch of property at issue ("the Property") originally was a railroad corridor. The former railroad purpose easements on the Property originally were established in the nineteenth century by the Georgia Airline Railway Company, the Atlanta and Richmond Air Line Railway Company, The Atlanta and Charlotte Air Line Railway Company, and Southern Railway Company through a combination of deeds and agreements with landowners at the time. Norfolk Southern Railroad ("Norfolk") eventually became the owner of the railroad easements as successor to these companies. In 2004, Norfolk transferred its interest in the Property to entities unrelated to this matter, but reserved to itself an easement for railroad purposes. In 2008, The Atlanta Development Authority acquired the Property in order to develop the Atlanta BeltLine, "a transportation and economic development initiative involving, among other things, multi-use trails for pedestrian/bicycle traffic and fixed rail routes and modern streetcars within the City of Atlanta." Atlanta BeltLine, Inc. ("ABI") is the implementation agent for the BeltLine.

Following acquisition of the property by ADA and in connection with developing and operating the BeltLine, ADA and ABI entered into at least 60 different agreements with adjacent property owners to resolve any potential issues

relating to property rights. The agreements include boundary line agreements, license agreements, access agreements, limited warranty deeds, and a variety of easement agreements, including easements granted by certain of the putative class members to ADA and ABI and vice versa. Putative class members who did not enter into property-rights agreements with the City Defendants were notified by letter and/or e-mail of ABI and/or ADA's planned use of the Property beginning in 2008.

The Property includes part of the BeltLine's Eastside Trail and part of the Beltline's Northeast Trail. Construction on the 2.25-mile section of the Eastside Trail began in 2010 and was opened to the public in October 2012. As of 2020, the Northeast Trail was partially open to the public with limited points of access, but lacked lighting and pavement. ABI considers the Northeast Trail an "Interim Trail" with plans for additional construction over the next few years. On March 7, 2017, Norfolk terminated its railroad purpose easement over the Property.

*The Class Action*

In 2017, Ansley Walk Condominium Association, Inc. ("Ansley") filed the underlying class action complaint for inverse condemnation, trespass, and attorney

fees, costs, and expenses.[1] According to the complaint, putative class members are "landowners who own fee title in land adjoining and within [the Property]," and are the successors in interest through the landowners who granted the original railroad easements. According to the complaint, when Norfolk "abandoned" its railroad purpose easement in 2017, the Property "became unburdened by all railroad easements, and Plaintiffs were entitled to reclaim their 'reversionary' right to use, possess, and control their land that they owned in fee simple to the centerline of [the Property]." However, these rights were "blocked" by the City's development of the Property into the BeltLine, constituting a trespass and effecting a taking of their property, entitling them to just compensation. Plaintiffs proposed that the prospective class members be identified by a search of the records of the Fulton County Tax Assessor and Recorder of Deeds.

Plaintiffs filed a motion for class certification on November 3, 2020, defining the proposed class as follows:

---

[1] Ansley filed an unopposed motion to add Jodaco, Inc., Wayne A. Christian, and Robert R. Smith as parties to the lawsuit, alleging that they are members of the putative class of landowners. The trial court granted the motion. Ansley subsequently filed a motion to add Foah Properties, LLC, as a party along with a motion to drop Jodaco, Inc. The trial court granted both motions.

The people and entities who, on March 7, 2017, owned interests in lands constituting part of the railroad corridor or right-of-way on which a rail line formerly was operated by [Norfolk] from milepost 633.10 to milepost 636.56 in Fulton County, Georgia, and who seek to recover just and adequate compensation for a taking by Defendants of their interests and rights to use, possess, control, and enjoy the railroad corridor lands having been abandoned by [Norfolk] on March 7, 2017, and who contend that Defendants are liable for the taking of and trespass upon their lands and interests.

After a hearing, the trial court denied class certification, concluding that Plaintiffs failed to satisfy any of the class certification requirements under OCGA § 9-11-23 (a) and (b). This appeal followed.[2]

*Discussion*

"Because class actions represent an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only, such actions are permitted only in the limited circumstances described in OCGA § 9-11-23." (Citation and punctuation omitted.) *Bowden v. Med. Center, Inc.*, 309 Ga. 188, 194 (II) (1) (a) (845 SE2d 555) (2020). See also *Georgia-Pacific Consumer Products, LP v. Ratner*,

---

[2] This is the second appearance of this case before this Court. In *Atlanta Dev. Auth. v. Ansley Walk Condo. Assn.*, 350 Ga. App. 584 (829 SE2d 858) (2019), we affirmed the trial court's denial of the City's motion to dismiss Plaintiffs' action.

295 Ga. 524, 525 (1) (762 SE2d 419) (2014). In order to certify a class, the trial court must find that the plaintiff satisfied all of the threshold factors of OCGA § 9-11-23 (a), which provides:

> (1) [t]he class is so numerous that joinder of all members is impracticable;
> (2) [t]here are questions of law or fact common to the class;
> (3) [t]he claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) [t]he representative parties will fairly and adequately protect the interests of the class.

*Bowden*, 309 Ga. at 193 (II) (1) (b). "If the plaintiff can satisfy the numerosity, commonality, typicality, and adequacy of representation factors of OCGA § 9-11-23 (a), she must then satisfy at least one of the three requirements of OCGA § 9-11-23 (b) in order to show that class certification is appropriate."[3] Id. at 193-

---

[3] OCGA § 9-11-23 (b) pertinently provides:
An action may be maintained as a class action if the prerequisites of subsection (a) of this Code section are satisfied, and, in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of:
    (A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
    (B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;
(2) The party opposing the class has acted or refused to act on grounds

6

194 (II) (1) (b). See also *City of Roswell v. Bible*, 351 Ga. App. 828, 831 (1) (833 SE2d 537) (2019). "Certification is improper if a plaintiff fails to establish even one of the required factors listed in OCGA § 9-11-23 (a) and (b)." (Citation and punctuation omitted.) *Doctors Hosp. Surgery Center, L.P. v. Webb*, 307 Ga. App. 44, 46 (704 SE2d 185) (2010). "To satisfy these requirements, it [is] not enough for the plaintiffs simply to [allege] that they were satisfied. Rather, the plaintiffs [have] to come forward with evidence to prove their satisfaction of the statutory requirements." (Citations and punctuation omitted.) *Ratner*, 295 Ga. at 526 (1). See also *Bible*, 351 Ga. App. at 831 (1) (class proponents bear the burden of proving that class certification is appropriate).

"Trial courts are vested with broad discretion to decide whether to certify a class, and absent an abuse of that discretion, we will not disturb the trial court's decision." (Citation and punctuation omitted.) *Bible*, 351 Ga. App. at 830 (1). "Implicit in this deferential standard of review is a recognition of the fact-intensive

generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

7

basis of the certification inquiry and of the trial court's inherent power to manage and control pending litigation." (Citation and punctuation omitted.) *Endochoice Holdings, Inc. v. Raczewski*, 351 Ga. App. 212, 214 (830 SE2d 597) (2019). We will affirm the trial court's factual findings if supported by any evidence. Id. Finally, "[b]ecause OCGA § 9-11-23 is based on Rule 23 of the Federal Rules of Civil Procedure, it is appropriate that we look to federal cases interpreting that rule for guidance." Id. at 214-215. Accord *Bickerstaff v. Suntrust Bank*, 299 Ga. 459, 462 (1) (788 SE2d 787) (2016).

On appeal, Plaintiffs contend the trial court abused its discretion in denying class certification under OCGA § 9-11-23 (a) and OCGA § 9-11-23 (b) (3). Because we agree with the trial court that Plaintiffs have failed to satisfy the predominance requirement of OCGA § 9-11-23 (b) (3), we find no abuse of discretion.

As previously stated, in addition to the requirements of OCGA § 9-11-23 (a), putative class representatives must satisfy at least one of the requirements set forth in OCGA § 9-11-23 (b). *Bible*, 351 Ga. App. at 830 (1). Here, Plaintiffs rely on OCGA § 9-11-23 (b) (3), which provides that a class action may be maintained if the trial court "finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for the fair and efficient adjudication of the controversy."[4]

> To determine whether the requirement of predominance is satisfied, a . . . court must first identify the parties' claims and defenses and their elements. The . . . court should then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial. Common questions are ones where the same evidence will suffice for each member, and individual questions are ones where the evidence will vary from member to member.

(Citations and punctuation omitted.) *Brown v. Electrolux Home Products, Inc.*, 817 F3d 1225, 1234 (III) (B) (11th Cir. 2016). See also *Tyson Foods, Inc. v. Bouaphakeo*, 577 U. S. 442, 453 (II) (A) (136 SCt 1036, 194 LE2d 124) (2016) ("An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof.") (citation and punctuation omitted).

---

[4] In their motion for class certification below, Plaintiffs alternatively relied on OCGA § 9-11-23 (b) (1) ("risk of inconsistent adjudications"). The trial court found that Plaintiffs failed to satisfy this criteria, as well. On appeal, Plaintiffs do not assert any error with regard to this conclusion.

Thus, "[i]n considering whether common questions will predominate, we look to the specific claims asserted." *Endochoice*, 351 Ga. App. at 218 (2).

Our inquiry begins with the elements of the underlying causes of action: inverse condemnation and trespass. Plaintiffs assert that several legal issues common to the proposed class dominate this litigation: (1) the nature of the interests conveyed to the original five railroads; (2) the effect of the Termination of Railroad Easement signed by Norfolk in March 2017; (3) the application of Georgia's center-line presumption to establish abutting landowners' title to the corridor property; (4) the effect of the City's continued use of the abutting landowners' property for the BeltLine; and (5) the legally correct date of taking. Conversely, the City asserts that determining whether most of these elements are met requires a property-specific inquiry and that issues of individual ownership, as well as defenses and damages, overshadow any common issues. We agree with the City.

Each of Plaintiffs' claims requires a determination that the putative class members own the property adjoining the railroad corridor and that their rights extend to the center-line of the corridor. See *HBC2018, LLC v. Paulding County School Dist.*, 358 Ga. App. 28, 30 (852 SE2d 884) (2020) ("[a]n unconstitutional taking claim requires the taking of a valid property interest") (citation and punctuation

10

omitted); *James v. Riley*, 181 Ga. 454 (2) (182 SE 604) (1935) ("To maintain an action for trespass or injury to realty, it is essential that the plaintiff show either that he was the true owner or was in possession at the time of the trespass."). See also *Fambro v. Davis*, 256 Ga. 326, 327 (1) (348 SE2d 882) (1986) ("[w]henever a railroad is abandoned, the presumption is that the fee is in the adjacent landowners and that their right extends to the center-line, unless the contrary appears"). And here, each class member's ownership is an individual issue that is not susceptible to class-wide proof because it requires an analysis of each property deed. In addition, as the trial court correctly pointed out, there are approximately 60 property-rights agreements between the putative class members and the City that must be individually reviewed to determine their impact on the putative class members' claims and ownership as well as possible defenses. For example, some putative class members signed boundary-line agreements that may have conveyed any interest the member may have held in the Property to ADA.[5] Plaintiffs argue that the center-line

---

[5] In support of their assertion that any individual issues stemming from these property agreements are minor, Plaintiffs point out that the agreements are in the record, and "[this] Court can see for itself that they largely have no impact on Plaintiffs' claims." The implication that this Court should review the approximately 60 agreements to determine whether they impact Plaintiffs' claims simply reinforces the individualized issues these agreements raise. Moreover, the issue before us is not whether Plaintiffs may ultimately prevail on the merits, but whether the requirements

11

presumption permits class treatment of ownership, but whether the presumption applies is deed-specific. See *1845 La Dawn Lane, LLC v. Bowman*, 277 Ga. 741, 742 (1) (594 SE2d 373) (2004) ("Georgia courts apply a rule of construction to hold that the deed conveys the fee interest that the grantor held in the road *unless there is a clear expression of a contrary intent*") (emphasis supplied); *Fambro*, 256 Ga. at 327 (1) (applying center-line presumption to property abutting railroad right-of-way). See also Daniel F. Hinkel, Pindar's Ga. Real Estate Law and Procedure, § 13:10 (7th ed., updated April 2021).

Additionally, to establish their takings claim, Plaintiffs will be required to prove that the original grantors intended to convey a railroad-purpose easement to the railroad as opposed to fee simple. See, e.g., *Brown v. United States*, 126 Fed. Cl. 571, 583 (II) (B) (1) (2016).

> Under Georgia law, "the crucial test in determining whether a conveyance grants an easement in, or conveys title to, land, is the intention of the parties, but in arriving at the intention many elements enter into the question." *Jackson v. Rogers*, 205 Ga. 581 [(54 SE2d 132)] (1949). We must examine "the whole deed," and consider "[t]he recitals in the deed, the contract, the subject-matter, the object, purpose, and the nature of restrictions or limitations, and the attendant facts and

of OCGA § 9-11-23 have been met. See *Endochoice*, 351 Ga. App. at 215.

circumstances of the parties at the time of making the deed." *Johnson v. Valdosta, Moultrie & W. R.R.*, 169 Ga. 559 [150 SE 845)] (1929)[.]

*Hardy v. United States*, 965 F3d 1338, 1344 (I) (A) (2020) (addressing whether deeds conveyed fee simple estates or easements to railroad under Georgia law). Thus, this determination requires an analysis of the 13 original, handwritten conveyance instruments associated with the 76 claims.[6] If any of these instruments conveyed fee simple title to the railroad rather than an easement, then any putative class members whose properties are associated with those instruments have no ownership rights to the Property. Plaintiffs argue that 13 "is a comparatively small number of source conveyances for a case like this." Regardless of the comparative number of original deeds, the issue of whether the railroad acquired an easement cannot be ascertained in one fell swoop; instead, it presents an individual question dependent on variable evidence.[7]

---

[6] As the trial court noted in its order, Plaintiffs have only located 11 of the 13 identified conveyance instruments.

[7] Plaintiffs also argue that the interpretation of the original conveyance instruments presents a common question because "[l]ike any other contract-interpretation question, it is initially a question for the court . . . it is virtually always decided by the court as a matter of law." But, whether an issue is legal or factual is a separate question from whether an issue is common or individualized.

Plaintiffs contend that the trial court, as well as the City, erroneously "gave weight to the City's potential defenses and to potential individualized damages issues" in considering whether common issues predominate. For example, Plaintiffs argue that the various property agreements between putative class members and the City may raise individualized questions, but "these . . . would be defenses having nothing to do with Plaintiffs' case," and "defenses should not defeat class certification." But, as already explained, courts look to the claims *and defenses* presented in determining whether predominance is satisfied. See *Brown*, 817 F3d at 1234 (III) (B). See, e.g., *Sellers v. Rushmore Loan Mgmt. Svcs.*, 941 F3d 1031, 1040-1042 (IV) (B) (11th Cir. 2019) (holding that district court improperly categorized a preemption defense and remanding for district court to decide whether common issues predominate in light of preemption defense raising a common question).

As to the issue of damages,

the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate. The black letter rule . . . is that individual damage calculations generally do not defeat a finding that common issues predominate. Although damages often raise numerous individual questions, predominance is a qualitative rather than a quantitative concept. It is not determined simply by counting noses:

14

that is, determining whether there are more common issues or more individual issues, regardless of relative importance.

(Citations and punctuation omitted.) *Brown*, 817 F3d at 1239 (III) (B) (3). See also *Brenntag Mid South, Inc. v. Smart*, 308 Ga. App. 899, 906 (2) (b) (i) (710 SE2d 569) (2011) ("common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues") (citation and punctuation omitted). However, "individual damages defeat predominance when they are accompanied by significant individualized questions going to liability." (Citation and punctuation omitted.) *Brown*, 817 F3d at 1240 (III) (B) (3). Thus, "the individual nature of the plaintiffs' damages is still relevant to whether predominance is satisfied." Id. at 1239 (III) (B) (3).

In the instant case, the trial court correctly considered the individualized nature of damages after concluding that "Defendants' liability for inverse condemnation and trespass cannot be established without engaging in multiple individualized, case-by-case determinations." Further, given that the properties at issue include both single-family and multi-family residential as well as a wide variety of commercial properties, we agree with the trial court's conclusion that the issue of damages would be highly individualized in this case. A real estate appraiser retained by the City to assess

15

residential properties along the corridor deposed that a "mass valuation method" would not be appropriate for "valuing the properties or any potential damages to the properties" at issue, and that each property would need to be individually appraised. A second appraiser retained by the City to assess commercial properties deposed that this is "a complicated stretch of property. . . . It's urban . . . it's very densely developed, and so . . . it does appear to be a complicated . . . analysis." In his opinion, each property at issue would need to be analyzed and appraised individually. In light of the above, we conclude that the individualized nature of damages further shows that individual issues predominate over common ones. See, e.g., *Atkins v. United States*, No. 4:15CV933CDP, 2016 WL 3878466, at \*4-5 (E.D. Mo. July 18, 2016). Because Plaintiffs have failed to show that questions common to the class predominate over questions affecting individual members, the trial court did not abuse its discretion in denying class certification.[8]

*Judgment affirmed. Doyle, P. J., and Reese, J., concur.*

---

[8] Given our holding, we need not address Plaintiffs' remaining enumerations as to the other requirements for class certification. See *R.S.W. v. Emory Healthcare, Inc.*, 290 Ga. App. 284, 287 (2) (659 SE2d 680) (2008).