**FOURTH DIVISION
DILLARD, P. J.,
RICKMAN and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 18, 2024**

# In the Court of Appeals of Georgia

A23A1646. ADAM RICE et al. v. FULTON COUNTY et al.

PIPKIN, Judge.

Appellants, a group of Fulton County tax payers, filed a proposed class action lawsuit against Fulton County and many of its municipalities[1] (collectively "Appellees") alleging that Appellees had utilized an illegal method for assessing property taxes on homes sold in 2015. The trial court denied Appellants' motion for class certification, holding that the proposed class failed to meet the commonality and predominance requirements of OCGA § 9-11-23 (a) (2) and (b) (3). Appellants allege that this was error; we agree, and we reverse.

1.      *Factual and procedural history*

---

[1] The municipalities include the cities of Atlanta, Johns Creek, Roswell, Alpharetta, and Milton.

This is the second iteration of this case to come before this Court for appellate review. As we explained in our prior decision, see *Rice v. Fulton County*, 358 Ga. App. 1 (852 SE2d 860) (2020) (*Rice I*), Appellants filed this action seeking a refund of ad valorem property taxes under OCGA § 48-5-380 from Appellees based on alleged illegal property tax assessments. Id. at 1. In *Rice I*, this Court reversed the trial court's grant of Appellees' motion to dismiss Appellants' second amended complaint for failure to state a claim. After the case was returned to the trial court, Appellants amended their complaint two more times and moved the trial court for class certification under OCGA § 9-11-23 (a) and (b) (3).

In its motion for class certification, Appellants alleged that, in 2016 and 2017, the Fulton County Board of Assessors ("FCBA") used an illegal method for assessing property taxes on homes sold in 2015.[2] Appellants contended that the FCBA illegally overrode the fair market value assessments generated by FCBA's Computer Assisted Mass Appraisal ("CAMA") system and replaced those assessments with the higher purchase price that the taxpayer paid for the property the year before. Appellants

---

[2] The original motion to certify the class included homes sold in 2015 and 2016. But Appellants later withdrew their claims concerning homes sold in 2016, and the lone class member representing that group voluntarily dismissed his claims.

alleged that properties that did not sell in 2015 did not have their CAMA values overridden. Appellants contended that this scheme, called "sales chasing"[3] was used by the FCBA in order to intentionally target certain properties and assess higher taxes, which, Appellants argued, "resulted in taxes that were not uniform or fairly and justly equalized," violating Article 7, § 1, Para. 3 of[4] the Georgia Constitution and OCGA § 48-5-306 (a)[5].

   2.   *Trial Court's Ruling*

---

[3] As explained in *Rice I*, "[s]ales chasing, also known as selective reappraisal, is the practice of selectively changing values for properties that have been sold, while leaving other values alone. [T]he practice of sales chasing creates inequities between properties and, unless adjusted for, renders sales ratio studies invalid." (Citations and punctuation omitted.) 358 Ga. App. at 6 n.8

[4] Also known as the Uniformity Clause, this constitutional provision requires all property taxation to be "uniform upon the same class of subjects within the territorial limits of the authority levying the tax." See also *Buckler v. DeKalb County Bd of Tax Assessors*, 263 Ga. App. 305, 307 (587 SE2d 797) (2003) ("Realty and tangible personal property are of the same class, and the constitutional rule of uniformity in taxation requires that both be taxed alike." (Citation omitted.)).

[5] This provision states that "[t]he board shall see that all taxable property within the county is assessed and returned at its fair market value and that fair market values as between the individual taxpayers are fairly and justly equalized so that each taxpayer shall pay as nearly as possible only such taxpayer's proportionate share of taxes."

The trial court determined that Appellants could not meet the commonality or predominance prongs for class certification under OCGA § 9-11-23 (a) (2) and (b) (3). Specifically, the trial court determined that: Appellants "have not articulated a viable legal or classwide factual theory for how they will prove lack of uniformity of assessments and equalization of values without getting into individualized analysis of comparable properties and values"; all that Appellants can show on a classwide basis "is that a computer program exists that generated a different (lower) value than the purchase price that was actually used as the property's assessment"; the use of different methods to calculate the appraisals would "not suffice to prove lack of uniformity of assessments or equalization of values"; and that, in this case, "the existence or lack of uniformity can only be evaluated by reference to the properties' values, which is an individualized factual issue."

Based on the foregoing, the trial court concluded that "liability for a tax refund based on lack of uniformity of assessments or equalization is an individualized issue, not a common question susceptible of being answered by classwide common proof." The trial court denied class certification and Appellants appealed.

3.    *Analysis*

"Plaintiffs have the burden of establishing their right to class certification, and we review the trial court's decision in certifying or refusing to certify a class action for an abuse of discretion." (Citation omitted.) *Doe v. Vest Monroe, LLC*, 368 Ga. App. 572, 572 (1) (890 SE2d 439) (2023). Generally speaking, while an abuse of discretion standard "is deferential, it is not toothless. An abuse of discretion occurs where a ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." (Citations and punctuation omitted.) *Eagle Jets, LLC v. Atlanta Jet, Inc.*, 347 Ga. App. 567, 576 (2) (c) (820 SE2d 197) (2018).

"In determining the propriety of a class action, the first issue to be resolved is not whether the plaintiffs have stated a cause of action or may ultimately prevail on the merits but whether the requirements of OCGA § 9-11-23 have been met." (Punctuation and citation omitted.) *SunTrust Bank v. Bickerstaff*, 349 Ga. App. 794, 800 (2) (824 SE2d 717) (2019). Thus, in order to certify a class, a trial court must find that the putative class satisfies the four prongs of OCGA § 9-11-23 (a), which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation. After meeting these factors, a plaintiff must then "satisfy at least one of the three requirements of OCGA § 9-11-23 (b) in order to show that class certification is

appropriate." (Footnote omitted). *Bowden v. Med. Center Inc.*, 309 Ga. 188, 193-194 (1) (b) (845 SE2d 555) (2020). Relevant here is OCGA § 9-11-23 (b) (3), also called the "predominance and superiority" prong, which requires "[t]he court find[] that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Id. "To satisfy these requirements, it [is] not enough for the plaintiffs simply to [allege] that they were satisfied. Rather, the plaintiffs [have] to come forward with evidence to prove their satisfaction of the statutory requirements." (Citations and punctuation omitted.) *Georgia-Pacific Consumer Products, LP v. Ratner*, 295 Ga. 524, 526 (1) (762 SE2d 419) (2014). With these principles in mind, we address Appellants' enumerations.

(a) *Commonality*

Appellants allege that the trial court abused its discretion when it determined that they failed to meet the commonality requirement, finding that the putative class

presented a legal theory that would require individual analysis. We agree that this was error.[6]

It is well settled that commonality is "a relatively low bar" of proof and "even a single common question will do." (Citations and punctuation omitted.) *Doe*, 368 Ga. App. at 576 (2) (a). Still, it is the plaintiff's burden to show that "[t]here are questions of law or fact common to the class." OCGA § 9-11-23 (a) (2). "The common contention must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." (Citations and punctuation omitted) *Bowden*, 309 Ga. at 194-195 (1) (c). Indeed,"[w]hat matters to class certification . . . [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." (Citation and punctuation omitted; emphasis in original.) *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (II) (A) (131 SCt 2541, 180 LE2d 374) (2011). Generally, this "requires the plaintiff to

---

[6]On appeal, the City of Roswell argues that the class representative for the City of Roswell subclass does not meet the requirements of typicality, commonality, or adequacy. But the trial court did not rule on these issues, so we cannot review them on appeal.

demonstrate that the class members have suffered the same injury." (Citation and punctuation omitted.) *Bowden*, 309 Ga. at 194 (1) (c).

Here, the trial court found that Appellants failed to establish commonality because Appellants' only claim of common proof is "that a computer program exists that generated a different (lower) value than the purchase price that was actually used as the property's assessment." But the record shows that Appellants identified a different and broader common question that may be answered on a classwide basis – whether the method used by Appellees to calculate the Appellants' property taxes was legal. See OCGA § 48-5-380 (providing that each county and municipality shall refund taxes "[w]hich are determined to have been erroneously or illegally assessed and collected from the taxpayers under the laws of this state or under the resolutions or ordinances of any county or municipality"). The answer to this question will not vary with each class member because it is binary - either the method used by Appellees to calculate the putative class members' property taxes was legal or it was not. "Thus, a classwide proceeding in this case has the capacity to generate common answers that will drive the resolution of this litigation and renders a class action superior to other

8

available methods for the fair and efficient adjudication of the controversy." *Bickerstaff*, 349 Ga. App. at 802. See also *Dukes*, 564 U.S. at 350 (II) (A).

Still, Appellees argue that we should affirm the decision of the trial court because Georgia law allows county boards of tax assessors to use different methods to arrive at the fair market value of any given property. See, e.g., *Sherman v. Fulton County Bd. of Assessors*, 288 Ga. 88, 91 (701 SE2d 472) (2010). This case law is inapposite, however, because Appellants do not contend that they are entitled to a specific valuation method. Instead, they contend that the alleged sales chasing method used by Appellees was so arbitrary that it was not an appraisal method at all. See, e.g., OCGA § 48-5-2 (3) (B) (defining "fair market value" and listing eight criteria that a tax assessor "shall" apply when determining fair market value); Ga. Comp. R. & Regs. 560-11-10-.09 (4) (a-c) (detailing the three methods for appraising real property - the direct sales comparison approach, the cost approach, and the income approach). See also *Dade County. v. Eldridge*, 229 Ga. App. 401, 401 (494 SE2d 106) (1997) ("[I]t is illegal for a taxing authority simply to pick and choose particular pieces of property to assess and reassess without regard to uniformity, proportionality and equalization among properties of the same class.").

9

Simply put, Appellants have alleged that the class members all suffered the same injury (having their property taxes calculated by an illegal method of valuation) based upon the same instance of Appellees' injurious conduct (overriding the CAMA system's fair market value assessment with the purchase price of the property). Although there will likely be differences in Appellants' damages in this case, "no matter how individualized the issue of damages may be, determination of damages may be reserved for individual treatment with the question of liability tried as a class action." (Citation and punctuation omitted.) *Doe*, 368 Ga. App. at 578 (2) (a) ("[T]he legal requirement that class members have all suffered the same injury can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects — the damages — are diverse."). See also *Bickerstaff*, 349 Ga. App. at 802 ("[I]t is well established that the need for individual damage calculations does not defeat class certification, so long as the liability inquiry presented common legal issues.") (Citation and punctuation omitted). Accordingly, Appellants have met the "relatively low bar" of proving commonality under OCGA § 9-11-23 (a) (2).

(b) *Predominance*

Appellants also contend that the trial court erred when it found that they did not meet the predominance requirement. Specifically, the trial court determined that the only way Appellants could prove their Uniformity Clause claim was to compare the assessed values of their properties with the values of other individual properties. This, the trial court concluded, made individual questions predominate over common ones. Based upon the record currently before this Court, however, we conclude that the trial court abused its discretion on the issue of predominance.

OCGA § 9-11-23 (b) (3) requires a court to determine whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." As to this, "[c]lass plaintiffs may satisfy this requirement by showing that issues subject to classwide proof predominate over issues requiring proof that is unique to the individual class members." (Citation and punctuation omitted.) *City of Roswell v. Bible*, 351 Ga. App. 828, 831 (2) (833 SE2d 537) (2019). "Thus, common issues may predominate when liability can be determined on a classwide basis, even when there are some individualized damage issues." (Citation and punctuation omitted.) *Brenntag Mid*

11

*South, Inc. v. Smart*, 308 Ga. App. 899, 906 (2) (b) (i) (710 SE2d 569) (2011). In order "[t]o determine whether the requirement of predominance is satisfied, a court must first identify the parties' claims and defenses and their elements. The court should then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial." (Citation and punctuation omitted.) *Ansley Walk*, 362 Ga. App. at 195-196.

In its fourth amended complaint, the putative class alleged that the FCBA used an illegal method to assess their property taxes which led to unequal and nonuniform taxation and higher taxes for the class members. In support of their motion for class certification, Appellants offered affidavit testimony from a Georgia tax assessor stating that the FCBA uses the CAMA system to appraise residential properties; that the Chief Appraiser of the FCBA instructed an employee to replace the CAMA generated value with the sales price for all properties sold in 2015 but not 2016; that "no individual analysis" was done for "any property whose value was overridden and increased to its sales price"; that, after the overrides were applied, "the FCBA took no steps to equalize values between taxpayers who purchased their homes in 2015. . . and those who did not[,] or otherwise ensure that taxpayers were paying only their fair

share of property taxes"; and that the overrides caused those taxpayers to pay more in taxes than they would have had the overrides not occurred.[7] In other words, Appellants' Uniformity Clause claim centers around their allegation that Appellees used an illegal method to assess the property taxes of the putative class and this method automatically impacted equalization and uniformity of their subsequent taxes.[8] This common issue of liability predominates over individual issues of damages because the answer to that common claim will determine Appellees' liability for all putative class members. And, any individualized issue of damages would not require the application of different facts or legal principles to answer the overall common question. Once again, "[t]he fact that there may be differences in the damages for the members of the class does not prevent certification." (Citation and punctuation omitted.) *Bickerstaff*, 349 Ga. App. at 803 (2). Cf. *Sterling v. Velsicol Chemical Corp.*,

---

[7] To the extent that Appellees argue that this evidence is not credible or not admissible, these are issues we do not consider at the class certification stage. See *City of Roswell v. Bible*, 351 Ga. App. 828, 831-833 (1), (2) (833 SE2d 537) (2019) (noting that "the rules of evidence are not strictly enforced at the class action stage" and that "merits-based disputes are not ripe for resolution" either).

[8] This was underscored by Appellants' counsel at oral argument who argued that the illegal method used by the FCBA was arbitrary, automatically led to inequity in the tax assessments, and that the FCBA took no steps to equalize the tax assessments after overriding the CAMA system.

855 F2d 1188, 1197 (6th Cir.1988) ("[W]here the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy."). Accordingly, the trial court abused its discretion by finding that Appellants failed to establish predominance for the purposes of class certification.

*Judgment reversed. Dillard, P. J., and Rickman, J., concur.*